UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WANDA HULL, | } |
| | } |
|     Plaintiff, | } |
| | } |
| v. | }   Case No.: 2:15-CV-1361-RDP |
| | } |
| RESTORE MANAGEMENT COMPANY LLC, et al., | } |
| | } |
|     Defendants. | } |

## MEMORANDUM OPINION

This matter is before the court on Motions to Dismiss filed by Defendants Comfort Care Home Health Services, LLC, Restore Management Company, LLC, and Restore Professionals Company, LLC (Doc. # 39); Defendant Edwin Moyo (Doc. # 40); and Defendant Alan Parker (Doc. # 42). Defendants' Motions are fully briefed. (Docs. # 47, 49, 50, 51). For the reasons stated below, Defendants' Motions are due to be denied.

### I.    Analysis

Plaintiff's Second Amended Complaint states two claims for relief. Count I asserts that Defendants violated the False Claims Act as prohibited by 31 U.S.C. § 3729(a)(1)(A) and (B). Count II alleges that Defendant Comfort Care Home Health Services, LLC retaliated against Plaintiff in violation of the False Claims Act. *See* 31 U.S.C. § 3730(h). The court will address each of these claims for relief in turn.

    **A.**    **Plaintiff's Second Amended Complaint Alleges a Violation of the False Claims Act with the Requisite Particularity**

Typically, the Federal Rules of Civil Procedure require only that a civil complaint state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, Rule 9(b) applies to actions under the False Claims Act. *U.S. ex rel.*

*Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002). In averments alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In *Clausen*, our Circuit noted that the practices of an entity that provides services to the Government may be unwise or even improper, but unless a false claim is *actually presented* there is no actionable damage as is required by the False Claims Act. *Clausen*. 290 F.3d at 1311.

> As such, Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall be stated with particularity" does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government. As in *Cooper*, and as with every other facet of a necessary False Claims Act allegation, if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government.

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Defendants contend that Plaintiff's Second Amended Complaint fails to plead that any Defendant actually submitted fraudulent reimbursement claims, and that that failure prevents Plaintiff's Second Amended Complaint from clearing the hurdle of Rule 9(b). (*See* Doc. # 39 at pp. 11-13). The court disagrees.

Plaintiff's Second Amended Complaint alleges four different schemes which she contends amount to violations of the False Claims Act: (1) a scheme involving the misrepresentation and falsification of documents, (2) a scheme involving the submission of claims for non-qualifying, non-homebound patients and the billing of unnecessary therapy services[1], (3) a scheme involving the submission of claims for a separate group of non-

---

[1] This scheme involved Defendants' alleged practice of enrolling all clients with a diagnosis of depression, dementia, behavioral issues, memory loss, or other psychiatric diagnosis into their Psychiatric Program. (Doc. # 37 at ¶ 60).

qualifying, non-homebound patients[2], and (4) a scheme involving the billing of unnecessary therapy visits. Plaintiff's Second Amended Complaint describes each of these schemes in detail, but admittedly does not identify specific false claims (related to specific patients) that were actually submitted as a result of the alleged misconduct.

However, this alone is not fatal to Plaintiff's Second Amended Complaint. Indeed, since *Clausen*, our Circuit has stated that "there is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim." *Mastej v. Health Management Associates, Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014).

> Under this Court's nuanced, case-by-case approach, other means are available to present the required indicia of reliability that a false claim was actually submitted. Although there are no bright-line rules, our case law has indicated that a relator with direct, first-hand knowledge of the defendants' submission of false claims gained through her employment with the defendants may have a sufficient basis for asserting that the defendants actually submitted false claims. *See U.S. ex rel. Walker v. R & F Properties of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005) (holding that Rule 9(b) was satisfied where the relator was a nurse practitioner in the defendant's employ whose conversations about the defendant's billing practices with the defendant's office manager formed the basis for the relator's belief that claims were actually submitted to the government).

*Id.* "At a minimum, a plaintiff-relator must explain the basis for her assertion that fraudulent claims were actually submitted." *Id.*

Here, Plaintiff has not pled any details as to specific patients for whom false claims were submitted, or any specifics related to any false claims actually submitted. However, the court's analysis does not end there. Rather, the court has looked carefully at Plaintiff's averments and finds that her allegations have a sufficient "indicia of reliability" which supports the allegation of an actual false claim (or claims) even absent detailed information about a representative claim. *See Clausen*, 290 F.3d at 1311; *Mastej*, 591 Fed. App'x at 707. Plaintiff has pled a detailed

---

[2] This scheme involved the Defendants' alleged submission of claims for reimbursement for patients who were not "homebound" as defined by Medicare. (Doc. # 37 at ¶¶ 76, 78).

3

factual basis which supports her knowledge of the submission of false claims. Plaintiff's Second Amended Complaint alleges that Plaintiff (1) had personal knowledge of Defendants' (allegedly fraudulent) billing practices, (2) derived that knowledge based on the nature of her employment and communications with other employees, (3) and sought to investigate Defendants' allegedly unlawful billing practices. (Doc. # 37 at ¶¶ 41, 52, 59, 77). Not only is Plaintiff a former officer of Comfort Care Home Health, but she alleges that she personally observed Defendants engage in unlawful conduct. (*See* Doc. # 37 at ¶ 59). Moreover, Plaintiff has identified specific categories of patients for whom Defendants allegedly submitted fraudulent documents and reimbursement claims.[3] (Doc. # 37 at ¶¶ 57-68, 74, 76). Here, Plaintiff has not merely alleged that Defendants submitted false claims "without any stated reason for h[er] belief that claims requesting illegal payments must have been submitted." *Clausen*, 290 F.3d at 1311. Instead, she alleged the basis for her belief that Defendants submitted false claims, and she has pled this basis with the requisite particularity.

### B. Plaintiff's Second Amended Complaint Adequately Alleges a Retaliation Claim

The False Claims Act entitles an employee to relief if that employee is discharged because of her lawful acts in furtherance of an action under the False Claims Act or due to her other efforts to stop a violation of the False Claims Act. 31 U.S.C. §3730(h). Section 3730(h) protects an employee from retaliation when there is a "distinct possibility" of litigation under the False Claims Act at the time of the employee's actions. *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 (11th Cir. 2010) (citing *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996)). "If an employee's actions, as alleged in the complaint, are sufficient to

---

[3] While this detailed description of the categories of patients for who Defendants allegedly submitted false claims alone may not be sufficient in and of itself to survive Defendants' Motions to Dismiss, such level of detail obviates concerns that this action is merely a "fishing expedition."

4

support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a qui tam action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h)." *Id.* at 1304. Because Plaintiff's False Claims Act retaliation does not depend on allegations of fraud, her allegations regarding her retaliation count need not be pled with Rule 9 particularity, and instead must only provide "a short and plain statement of the claim showing that [she] is entitled to relief." *Id.* (citing Fed. R. Civ. P. 8(a)).

Here, Plaintiff alleges that she complained to Defendants both orally and in writing about the allegedly unlawful schemes identified in her complaint. (Doc. # 37 at ¶¶ 57, 63, 83). Further, Plaintiff alleges that she convened a quality assurance team to investigate Defendants' practices related to recertifying patients for additional services. (*Id.* at ¶¶ 77, 101). When the quality assurance team identified instances of patients receiving improper services, which in turn resulted in a decline in Defendants' recertification rate, Plaintiff alleges that Defendant Parker halted the activity of the quality assurance team and directed Plaintiff to terminate the employees who comprised the team. (*Id.* at ¶ 101). Moreover, Plaintiff alleges that Defendant Parker demanded that she delete (and "re-delete") e-mails detailing Defendants' recertification requirements. (*Id.* at ¶ 104). Plaintiff contends that she was terminated as a result of her investigation of Defendants' practices and her internal reporting of Defendants' purported misconduct. (*Id.* at ¶ 110). Taken together, these allegations plausibly plead a claim that Defendants feared being sued in a *qui tam* action by Plaintiff, and discharged her as a result. Accordingly, Defendants' Motions to Dismiss are due to be denied as to Plaintiff's retaliation claim.

## II. Conclusion

For the reasons stated above, Defendants' Motions to Dismiss are due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this June 27, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE